UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONARCH BEVERAGE CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-01674-SEB-MJD |
| | ) | |
| DALE  GRUBB in his official capacity as | ) | |
| Commissioner of the Indiana Alcohol and | ) | |
| Tobacco Commission, | ) | |
| DAVID  COOK In his official capacity as the | ) | |
| Chairman of the Indiana Alcohol and Tobacco | ) | |
| Commission, | ) | |
| DAVID  COLEMAN In his official capacity as | ) | |
| the Vice Chairman of the Indiana Alcohol and | ) | |
| Tobacco Commission, | ) | |
| MARJORIE  MAGINN In her official capacity | ) | |
| as the Commissioner of the Indiana, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| INDIANA BEVERAGE ALLIANCE, | ) | |
| WINE & SPIRITS DISTRIBUTORS OF | ) | |
| INDIANA, | ) | |
| | ) | |
| Amicus. | ) | |
| | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross motions for summary

judgment. On October 21, 2013, Plaintiff Monarch Beverage Co., Inc. ("Monarch")

brought this action against Defendants in their official capacities, pursuant to 42 U.S.C. §

1983, alleging that certain provisions of the Indiana Code regulating the wholesale

distribution of alcohol violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[1]   On November 7, 2014, Defendants moved for summary judgment [Docket No. 79] and on December 9, 2014, Monarch filed a cross motion for summary judgment [Docket No. 93]. The motions are fully briefed. For the reasons detailed in this entry, we **GRANT** Defendants' motion for summary judgment and **DENY** Plaintiff's cross motion for summary judgment.[2]

## Factual Background

### I.     Indiana's Three-Tier Alcohol Regulation System

Following passage of the 21st Amendment to the Constitution, Indiana, like most other States, adopted a three-tiered system for regulating the production, distribution, and sale of alcohol. *See* FTC*, Possible Anticompetitive Barriers to E–Commerce: Wine* 5–7 (July 2003)*,* available at http:// www.ftc.gov/os/2003/07/winereport2.pdf. (visited September 29, 2015). The first tier consists of brewers, vintners, and distillers who manufacture alcoholic products.  The second tier is composed of wholesalers who purchase alcoholic products from the manufacturers and sell them to the retailers and dealers. The third tier is comprised of retailers and dealers who sell alcoholic products

---

[1] Plaintiff's Complaint names Alex Huskey, David Johnson, Dale Grubb and Melissa Coxey as defendants in their official capacities. Dkt. 1. However, since the Complaint was filed, Alex Huskey, David Johnson, and Melissa Coxey have been replaced in their roles in the Indiana Alcohol and Tobacco Commission by David Cook, David Coleman and Marjorie Maginn. Pursuant to Federal Rule of Civil Procedure 25(d), the latter are substituted as the official-capacity defendants.

[2] On December 9, 2014, Plaintiff filed a Motion for Oral Argument on Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment [Docket. No. 96]. Because we are able to rule based solely on the parties' written submissions, Plaintiff's Motion for Oral Argument is hereby **DENIED**.

directly to the consumers.[3] Except in certain limited circumstances, no business may operate within more than one tier, *see* Ind. Code §§ 7.1-5-9-9, 10(a), and a state-issued permit is required for every business at any tier—whether as a manufacturer, wholesaler, or retailer of alcohol. *Id.* § 7.1-3 *et seq.*

The focus of this litigation centers on the second tier: the wholesalers. Plaintiff is a wholesaler. Wholesale suppliers are central to the alcohol regulatory system by creating a buffer between manufacturers and retailers, serving as a port of entry for out-of-state alcohol coming to Indiana, facilitating the collection of excise taxes on alcohol, and ensuring that alcohol products are sold only to licensed retailers and dealers.[4] Bedwell Tr. 23:18–25:15; Terry Dep. 147:3–11.

Wholesalers are regulated by the State in several ways. They are prohibited from tying purchases of one type of alcoholic product to purchases of another, from imposing minimum purchase requirements on retailers and dealers, and from entering into exclusivity contracts with them. Ind. Code § 7.1-5-5-7; 905 Ind. Admin. Code 1-5.1-1, 11. In addition, wholesalers must make known in writing their prices to their customers, and those prices must be made available to all retailers and dealers on a

---

[3] Dealers typically include grocery stores, liquor stores and pharmacies that sell alcohol for off-premise consumption. Retailers, on the other hand, typically include bars and restaurants that sell alcohol for on-premises consumption. Ind. Code §§ 7.1-3-9-8, 7.1-3-10-5, 6.

[4] As explained by the General Manager and CEO of Monarch Beverages, "The purpose of the wholesaler is to provide some level of assurance to the State that only licensed wholesalers and dealers are selling to consumers…. That for alcohol to enter the state of Indiana, it has to go through a state-licensed wholesaler. Therefore, the wholesaler becomes the port of entry. We are the ones who receive it, account for it, report to the State as to what alcohol has entered the state. So there can be come transparency; and, therefore, accountability in the system to the State of Indiana for the distribution of alcohol." Terry Dep. 147:3–149:12.

nondiscriminatory basis and adhered to for at least seven days after they are publicized. Ind. Code § 7.1-5-5-7(a); 905 Ind. Admin. Code 1-31-1, 2.

Indiana also regulates the type and number of permits any given wholesaler may hold at any given time. Indiana issues separate permits for the wholesaling of beer, wine, and liquor. Beer wholesale permits are issued on a county-by-county basis, with a limit on the number of wholesale permits that can be issued by any one county based on its population. Ind. Code § 7.1-3-22-2. Wine and liquor permits, on the other hand, are issued statewide without any numerical limitation. *Id.* at §§ 7.1-2-22 *et. seq.* Under "The Prohibited Interest Provisions" of the Indiana Code, Ind. Code §§ 7.1-5-9-3, 4, 6 and 7.1-3-3-19, a wholesaler may possess one of the three individual permits, both a wine and beer permit, or both a wine and liquor permit. A wholesaler may not, however, hold both a beer and a liquor wholesale permit. *Id.* Notwithstanding this limitation, any wholesaler who holds permits for wine and for liquor may also distribute up to a million gallons a year of flavored malt beverages, which are a type of beer. *Id.* §§ 7.1-3-8-3, 7.1-3-13-3(d). Likewise, a wholesaler who holds permits for beer and for wine may distribute brandy and certain cream-based liqueurs. *Id.* §§ 7.1-3-3-5, 7.1-3-13-3.

Depending on which permit(s) they obtain, wholesalers are subject to various regulations. Specifically, a wholesaler who has obtained a permit for beer receives "franchise protections" that make it unlawful for a manufacturer of beer to cancel or terminate their agreement with them "unfairly and without due regard to the equities of the other party." *Id.* at § 7.1-5-5-9(c). If the wholesaler suspects a violation of these

4

protections has occurred, it may report such violation to the Alcohol and Tobacco Commission who is required to investigate and enforce injunctions under the provision. *Id.* § 7.1-2-3-26. A wholesaler who obtains a permit for wine or liquor, or both, does not enjoy any such contractual and enforcement protections by the Alcohol and Tobacco Commission.

## II.   Monarch Beverage Co., Inc.

Monarch Beverage Co., Inc. is a wholesaler of alcohol products in Indiana. Monarch currently holds state-issued permits for the sale of beer and wine to the first-tier distributors. Terry Dep. 23:23–24:25. Monarch has been a wholesaler of beer since 1947 and has been a wholesaler of wine since 1976. *Id.* at 25:6–7, 19–22, 37:20–38:8. Currently, Monarch distributes wine in all 92 counties in Indiana and beer in 89 Indiana counties, operating as the exclusive wholesaler of MillerCoors beer in 70 of those 89 counties. *Id.* at 55:7–9, 57:1–21, 59:20–25, Defs. Ex. 18. Among its products, Monarch distributes wine manufactured by E. & J. Gallo Winery ("Gallo Winery"). *Id.* at 46:8–12. Gallo Winery also manufactures four liquor products, which Monarch represents that it would like to be authorized to distribute; however, because Monarch has a permit for wholesales of beer, it may not obtain a permit for wholesales of liquor, pursuant to Indiana's Prohibited Interest Provisions. Thus, under Indiana law, Monarch is prohibited from distributing Gallo Winery's liquor products.

Monarch has been openly critical of Indiana's Prohibited Interest Provisions. In his attempt to have the provisions repealed, Monarch's General Manager and CEO

Phillip Terry has addressed his concerns to approximately 150 members of the General Assembly. *Id.* at 138:20–140:12. In addition, Monarch has participated in several public hearings in support of the repeal of the statutes that restrict Monarch's access to distribution permits and has provided draft legislative proposals that would effect the repeal of these provisions. *Id.* at 144:2–145:10, 146:21–147:2.

Monarch's suit challenges the constitutionality of Sections 7.1-3-3-19, 7.1-5-9-3, 7.1-5-9-4, and 7.1-5-9-6 of the Indiana Code under the Equal Protection Clause of the Fourteenth Amendment. See Dkt. 1. We address these issues and claims below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the evidence establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the

6

parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief.  In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard.  *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Thus, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita,* 475 U.S. at 574. The parties before us, by filing cross motions, stipulate that there are no material facts in controversy and that their dispute is ripe for decision on summary judgment.

## Discussion

### I.      Requirements of an Equal Protection Challenge

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S.

Const. amend. XIV.).[5] In the case before us, the parties have agreed that rational basis is the appropriate standard of review; see Pl.'s Br. at 1. Rational basis review requires the plaintiff to prove that: (1) the defendant(s) intentionally treated the plaintiff differently from others similarly situated; (2) the difference in treatment was caused by the plaintiff's membership in the class to which it belongs; and (3) the different treatment was not rationally related to a legitimate state interest. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (citing *Smith v. City of Chicago,* 457 F.3d 643, 650–51 (7th Cir. 2006)). Thus, to succeed on its claims of an Equal Protection violation, Plaintiff must prove each of the above three elements.

### A.  Monarch's Similarly Situated Comparators

Plaintiff's first hurdle is to show that it was treated disparately from a similarly situated entity or group. *Smith,* 457 F.3d at 650–51. Unfortunately, in its briefing Monarch has entirely failed to identify any such comparator. We don't know if it intends to show that its treatment was unequal compared to other Tier 2 wholesalers or to other Tier 1 and 3 suppliers of alcohol to Indiana consumers.  t is essential to Plaintiff's success in this litigation that it produce evidence demonstrating that another group or entity is in fact similarly situated to it  but who received greater benefits under the law. Without a

---

[5] When a statute regulates certain fundamental rights, such as voting or privacy, or distinguishes between people on the basis of certain suspect characteristics, such as race or national origin, the statute is subject to strict scrutiny. *Zablocki v. Redhail,* 434 U.S. 374, 388 (1978). To survive strict scrutiny, the regulation must serve a compelling state purpose and be narrowly tailored to achieving that purpose. *Id.* When a statute distinguished between people on the basis of other identified characteristics, such as gender and illegitimacy, which are less suspect, it is subject only to intermediate scrutiny. *J.E.B. v. Alabama,* 511 U.S. 127, 136 (1994); *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 725 (1982). To survive intermediate scrutiny, the regulation need only serve an important state interest and the means employed need only be substantially related to that interest. *Id.*

similarly situated comparator, Equal Protection claims simply "cannot hold water." *Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011); *RJB Prop., Inc. v. Bd. of Educ. of Chicago,* 468 F.3d 1005, 1010 (7th Cir. 2006).

In response to Defendants' argument that there exist no similarly situated comparators, Monarch rejoins stating that it is simply making a "facial challenge" to the statutes and that "the equal-protection claim [it] is making focuses on whether it makes sense to prohibit beer wholesalers from obtaining a permit to wholesale liquor *in the first place.*" Pl.'s Br. at 18 (emphasis in original).  Sidestepping entirely the need to identify any similarly situated comparators, Monarch dives headlong into a discussion of whether the Indiana Code's prohibition against a wholesaler's possession of both a beer and liquor wholesale permit is fair and whether it is rationally related to a legitimate government interest.

In ignoring the comparability issue, Monarch fails to prove an "essential" element of its claim. *Harvey*, 649 F.3d at 531. While it is true that the challenged statutory provisions must be rationally related to a legitimate governmental interest, they must also be shown to deprive Monarch of its right to equal protection under the.  *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941–42 (7th Cir. 2010) ("All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, *under like circumstances and conditions, people must be treated alike*, unless there is a rational reason for treating them differently." ) (emphasis added).

Despite having failed to develop this essential element of its claim in its motion for summary judgment, Monarch did describe in its Complaint wine wholesalers as being "similarly situated." Compl. at ¶ 6. This is a thin reed on which to base so substantial an argument, but, assuming it is Monarch's intention to advance this theory, we will address whether alcohol distributors who are granted wine and liquor wholesale permits are sufficiently similar to beer wholesalers to support an Equal Protection Clause violation, if they did or do, in fact, receive unwarranted preferential status under the challenged statutes.

The "similarly situated analysis is not a precise formula, but…what is clear is that similarly situated [comparators] must be very similar indeed." *LaBella Winnetka,* 628 F.3d at 942; *see also Racine Charter One, Inc. v. Racine Unified Sch. Dist.,* 424 F.3d 677, 680 (7th Cir. 2005) (holding that comparators must be "*prima facie* identical in all relevant respects."). This is true because the Equal Protection Clause "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Varner v. Monohan,* 460 F.3d 861, 865 (7th Cir. 2006) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Typically, whether a comparator is similarly situated is a question for the fact-finder; however, summary judgment is appropriate when no reasonable fact-finder could find that a plaintiff has satisfied its burden on the issue. *Srail*, 588 F.3d at 945.

Defendants maintain that the business of beer wholesaling in Indiana differs in material ways from the business of wine and liquor wholesaling. Perhaps the most

significant difference they cite is the franchise protections enjoyed by beer wholesalers, which are unavailable to wine and liquor wholesalers. These protections make it unlawful for a manufacturer of beer to terminate a contract with a beer wholesaler "unfairly and without due regard for the equities of the [beer wholesaler]." Ind. Code § 7.1-5-5-9(c). Additionally, if a manufacturer acquires the rights to supply another brand of beer, before it may transfer the new brand's wholesale rights, the existing wholesaler must be paid the fair market value for the rights. *Id.* at § 7.1-3-25, *et. seq.* Further, the Alcohol and Tobacco Commission is obligated to investigate violations of the protections and has a duty to enforce any injunctions issued under them. *Id.* at § 7.1-2-3-26.

Wine and liquor distributors, on the other hand, are not protected from a manufacturer's decision to terminate an existing contract, nor are they entitled to payments based on fair market value of their wholesale rights if those rights are transferred to another wholesaler. Based on these unique protections that are applicable only to beer wholesaler, wine and liquor wholesale market contracts are crafted and analyzed in a different light. Due to Monarch's failure to present any evidence that contradicts or overcomes the regulatory differences between wholesaling beer and wholesaling wine and liquor, we hold that beer wholesalers are not similarly situated to wine and liquor wholesalers for purposes of Monarch's Equal Protection Clause claims.

Accordingly, summary judgment in favor of Defendants is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.  The Provisions' Rational Relation to Legitimate State Interests**

11

Although Monarch's Equal Protection claim cannot succeed for lack of similarly situated comparators, we shall nonetheless address Monarch's related contention that the Prohibited Interest Provisions of Indiana's Code lack a rational relationship to the State's legitimate interests.   As we explain below, this theory is ultimately no more availing to Plaintiff in terms of salvaging his Equal Protection claim than his glib dismissal of the need for comparability turned out to be.

Under the rational basis test, "the government's action simply cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose." *Smith*, 457 F.3d at 652 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)) (emphasis added). The government is not required to articulate the legitimate interest at the time of a statute's adoption; rather, "the burden is upon the challenging party to eliminate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Heller v. Doe,* 509 U.S. 312, 320 (1993)).  Moreover, because the rational basis test "is not subject to courtroom fact-finding," the government's reasons may be based even on "rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315 (1993). Once a plausible basis for the legislation is identified, the inquiry by a court is at its end. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980). This basic formulation applies whether the plaintiff challenges a statute on its face, as applied, or challenges some other act or decision of government. *Smith*, 457 F.3d at 652 (collecting cases). When dealing with a local economic regulation,

12

the test becomes even more indulgent of the State's interests; in those cases "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013).

Here, Defendants have articulated more than one legitimate state interest to which the challenged provisions rationally relate. Monarch, in response, proffers a number of policy and fact-based arguments, many of which are unconvincing.[6]

Title 7.1 of the Indiana Code recites three specific purposes as justifications for these provisions: (1) to protect the economic welfare, health, peace, and morals of the people of Indiana; (2) to regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages; and (3) to provide for the raising of revenue. Ind. Code. § 7.1-1-1-1. While Monarch does not argue that these interests underlying the statute are not legitimate, it contends that the Prohibited Interests Provisions do not rationally correspond to or reflect the stated purposes.

---

[6]    Monarch has devoted a significant portion of its brief to expounding on the allegedly flawed origins of Indiana's alcohol regulatory system, stating that the General Assembly never provided an explanation for the provisions at issue and suggesting that they were "enacted to protect and promote a patronage system that once operated to the benefit of state and local politicians." *See* John D. Barnhart & Donald F. Carmony*, 2 Indiana from Frontier to Industrial Commonwealth* 480 (1954). This line of attack by Monarch ignores the rule that "we never require a legislature to articulate its reasons for enacting a statute, [and] it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).
       In addition, although Monarch has conceded that this case can is to be analyzed under the rational basis standard, it cites cases that invoke intermediate and strict scrutiny, including analogizing our case to the landmark decision in *Loving v. Virginia*, 388 U.S. 1 (1967).

Defendants advance multiple ways in which the Prohibited Interest Provisions could be seen as furthering, or interpreted to further the purposes of Title 7.1: for one, Indiana restricts beer wholesalers from obtaining liquor permits in order to maintain certain minimum prices for alcoholic products, reasoning that increased competition from beer wholesalers could depress liquor prices, leading to increased liquor consumption, addiction, and other societal ills.[7] Defs.' Br. at 9–12, 32–33. According to Defendants, if beer wholesalers were also allowed to wholesale liquor, they could capitalize on their already-existing infrastructure and their protected status under the Indiana "franchise protections" to cut prices and gain a competitive advantage over existing liquor wholesalers. *Id.* at 32. Because Indiana imposes no floor on alcohol prices and allows alcohol to be sold at or below cost, Defendants maintain that there would be nothing to stop beer wholesalers who also obtain liquor permits from depressing alcohol prices in order to gain new business in the liquor market.

In response, Monarch describes Indiana's prohibition on the combined wholesale of beer and liquor as a "ludicrously ineffectual" means of maintaining high prices on alcohol. *See Plyer*, 457 U.S. at 228. Monarch points to alternative methods utilized in other states to inflate alcohol prices, focusing specifically on the use of excise taxes. *See* N. Gregory Mankiw, *Smart Taxes An Open Invitation to Join the Pigou Club*, 35 E. Econ.

---

[7] Defendants have cited studies linking alcohol abuse to societal costs and ills such as drunk driving, alcoholism, sexual abuse and violence, cognitive delays, lost work, and medical costs. These reports also link the price of alcohol to the consumption of alcohol. Bedwell Decl. at ¶ 5, Defs.' Exs. 7–17.  Studies also show that the price of alcohol affects the consumption of alcohol—higher prices means less consumption and lower prices means more consumptions. *Id.,* Defs.' Exs. 7, 8, 15. Monarch does not dispute that curbing consumption and maintaining high prices are legitimate state interests.

14

J. 14, 16 (2009) (arguing that the best way to regulate goods with social costs is to impose a tax that accounts for the additional social cost of the good.) Monarch points out that Indiana ranks as one of the lowest states in terms of its use of excise taxes on alcohol, arguing that a hike in taxes would better accomplish the stated goal of maintaining high alcohol prices.[8]   Monarch also proposes that Indiana could require minimum mark-ups on alcohol at the wholesale or retail level or that it could prohibit wholesalers from selling products at or below costs. Pl.'s Br. at 24.  According to Monarch, any of these alternative methods would better serve the State's purported interest in maintaining high alcohol prices.

Monarch's arguments, while perhaps reflecting sound legislative policy, do not represent sound judicial analysis.  It is immaterial to our analysis whether other states impose higher excise taxes or employ minimum mark-ups or create prohibitions on selling alcohol at or below costs as methods for maintaining high alcohol prices. "In the realm of social and economic regulation, the states are free to experiment and are given great latitude in determining who shall benefit from a particular enactment." *Sidle v. Majors*, 536 F.2d 1156, 1157 (7th Cir. 1976); s*ee also New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) ("It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.") (Brandeis, J.).

---

[8] The Tax Foundation ranks Indiana 42nd in beer excise tax, 42nd in liquor excise tax, and 35th in wine excise tax. Pl.'s Exs. 19–21; See Ind. Code §§ 7.1-4-2-1, 7.1-4-3-1, 7.1-4-4-1.

Indiana may not have chosen the "best way" to ensure high prices for alcohol and to realize its public policy goals, but the State is not required to choose the best or wisest way to regulate industry. *Beach Commc'ns, Inc.,* 508 U.S. at 313–15. Rational basis review necessarily elides judicial fact-finding. Ours is not to determine the best way to regulate an industry or to judge the wisdom or logic of legislative choices. *Id.* "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley,* 440 U.S. 93, 97 (1979). Accordingly, we defer to the policy choices made by the Indiana General Assembly regarding the appropriate method for inflating the price of alcohol, especially in light of Monarch's inability to show that the State's rationale does not represent a "conceivable state of facts [capable of providing] a rational basis for the [prohibition]." *See Heller,* 509 U.S. at 320.

Defendants note that, in addition to maintaining high prices on alcohol, the prohibition restricting beer wholesalers from also obtaining liquor permits and vice-versa results in a higher overall number of wholesalers in Indiana, given that beer wholesalers would otherwise have the power to eliminate the current liquor wholesalers, if they were allowed to enter the liquor market. Defs.' Br. at 32. As Defendants explain, liquor wholesalers would face greater difficulty in entering the beer market than beer wholesalers would in entering the liquor market, since beer wholesalers would be able to rely on contractual and statutory protections which liquor and wine wholesalers do not

receive currently enjoy. *Id.*  According to Defendants, the maintenance of a large number of wholesalers across the state is desirable for two reasons. First, the overall number of wholesalers directly correlates to the overall number of warehouses, trucks, employers, and employees, all of which generate tax revenue—an express goal of Title 7.1. Defs.' Br. at 33–35; see Ind. Code § 7.1-1-1-1(4). Second, the number of wholesalers equals the number of industry "watchdogs" who report violations to the Alcohol and Tobacco Commission, which is an important entitlement given to wholesalers; a higher number of such watchdogs is important in light of the fact that there are only 80 Indiana Excise Officers who are charged with enforcing all aspects of Title 7.1 throughout the State. Bedwell Decl. at ¶ 24.

Monarch rejoins that "market realities" cannot justify Defendants' theory that beer wholesalers would drive out existing liquor wholesalers. Pl.'s Br. at 30. Monarch says the opposite is true: that permitting beer wholesalers to enter the liquor market and compete with the "entrenched incumbents" is more likely to disrupt oligopoly conditions than to create them. *Id*. However, Monarch's argument fails to take into account that, under a rational basis review, the government's reasons prevail even if they are based only on "rational speculation unsupported by evidence or empirical data," *Beach Commc'ns, Inc.,* 508 U.S. at 315, and that "courts are compelled ... to accept a legislature's generalizations.... " *Heller*, 509 U.S. at 321. Defendants need not rely on "market realities" to support their reasons for these controls; they need only present rational speculation, which a court compelled to accept.  Defendants' theory that allowing beer

17

distributors to compete against liquor and wine distributors would decrease the overall number of wholesalers and deprive the state of tax revenue and industry oversight is a rational reason, and as such we accept it here.

Given these plausible bases for the Indiana's Prohibited Interest Provisions, our analysis comes to an end.[9] *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980). Monarch has failed to eliminate "any reasonably conceivable state of facts that could provide a rational basis for the [the General Assembly's] classification." *Heller* 509 U.S. at 320. Accordingly, Defendants are entitled to summary judgment.

## Conclusion

For the reasons set forth above, we hold that Sections 7.1-3-3-19, 7.1-5-9-3, 7.1-5-9-4, and 7.1-5-9-6 of the Indiana Code have not been shown to violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution as it pertains to Indiana beer wholesalers such as Monarch Beverage Co. Inc. Accordingly, Defendants' motion for summary judgment [Docket No. 79] is **GRANTED** and Plaintiff's cross motion for summary judgment [Docket No. 93] is **DENIED**. Plaintiff's motion for oral argument [Docket No. 96] is also **DENIED**. Final Judgment shall enter in favor of Defendants.

---

[9] Defendants also asserted that the existence of the "franchise protections" granted only to beer wholesalers would be a sufficient justification for prohibiting beer wholesalers from also engaging in liquor wholesaling. Monarch has argued that the State may not rely on this justification as it postdates the passage of the provisions at issue. *See Zobel v. Williams*, 457 U.S. 55, 61–62 (1982). Because Monarch has the burden of eliminating every reasonably conceivable state of facts that could provide a rational basis for the provisions, we do not necessarily accept Monarch's argument but we need not address it as an alternative basis for the challenged provisions of state law.

IT IS SO ORDERED.

09/30/2015

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

19

Distribution:

Steven M. Badger
BADGER LAW OFFICE
sbadger@badgercounsel.com

Michael P Maxwell, Jr
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Michael P Maxwell, Jr
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

John B. Herriman
CLARK, QUINN, MOSES, SCOTT & GRAHN
bherriman@clarkquinnlaw.com

Derek R. Molter
ICE MILLER LLP
derek.molter@icemiller.com

Richard A. Smikle
ICE MILLER LLP
richard.smikle@icemiller.com

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Sara Teresa Martin
INDIANA ATTORNEY GENERAL
sara.martin@atg.in.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Allison B. Jones
WILLIAMS & CONNOLLY LLP
ajones@wc.com

Kannon K. Shanmugam

WILLIAMS & CONNOLLY LLP
kshanmugam@wc.com

Amy  Saharia
WILLIAMS & CONNOLLY, LLP
asaharia@wc.com

Barry S. Simon
WILLIAMS & CONNOLLY, LLP
bsimon@wc.com